UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAPHNE JARRETT,
      Plaintiff,

-vs.-                           Case No:13-13651
                                  Hon. Lawrence P. Zatkoff

EQUITYEXPERTS.ORG, LLC,
a Michigan limited liability company,
      Defendant.
_____

# PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FRCP 56A.

Plaintiff moves this court to grant her Summary Judgment as to her remaining claim for violation of the Fair Debt Collection Practices Act, pursuant to FRCP 56a[1]. As noted in the attached brief, there are no genuine issues of any material fact and as a matter of law, Plaintiff is entitled to summary judgment. The Defendant has violated the Ms. Jarrett's rights under the FDCPA in numerous respects. As the FDCPA is a strict liability statute, the Defendant's violation of any of Plaintiff's rights under this act, entitles the Plaintiff to damages.

Plaintiff has sought Defendant's concurrence to this motion and has been unable to obtain such concurrence.

Respectfully submitted.

  February 21, 2014        /s/ Gary Nitzkin
                            GARY D. NITZKIN (P 41155)
                            NITZKIN & ASSOCIATES
                            Attorneys for Plaintiff

---

[1] The court dismissed the Plaintiff's state court claims leaving only her claim against Defendant for violation of the Fair Debt Collection Practices Act.

# TABLE OF CONTENTS

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FRCP 56A. ............ i

TABLE OF CONTENTS ............................................................................................ ii

QUESTIONS PRESENTED ..................................................................................... iv

INDEX OF AUTHORITY ......................................................................................... v

BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
PURSUANT TO FRCP 56A. ................................................................................... 1

    FACTS .................................................................................................................... 1

        Highlands estates homeowners Association ("HECA") Hires Defendant Equity Experts to
        Collect Delinquent Homeowners Association Dues on terms Requiring Defendant to seek
        its costs and charges from Homeowners only .......................................................... 1

        Defendant's Letters to Plaintiff ............................................................................. 2

STANDARD FOR GRANTING PLAINTIFF'S MOTION PURSUANT TO FRCP 56A ........... 3

THE FAIR DEBT COLLECTION PRACTICES ACT – GENERALLY ...................................... 4

    Standard of care under the FDCPA. ....................................................................... 5

DEFENDANT IS ONLY LEGALLY ABLE TO COLLECT CHARGES FROM PLAINTIFF
THAT HAVE BEEN ASSESSED TO HER OR INCURRED BY HER HOMEOWNERS
ASSOCIATION ...................................................................................................... 6

THE THREE COMMON FDCPA VIOLATIONS PRESENT IN MOST OF THE
DEFENDANT'S LETTERS TO MS. JARRETT ............................................................ 7

    False Amount Demanded ....................................................................................... 8

    False Creditor ...................................................................................................... 9

    Letterhead Confusion ........................................................................................... 9

EACH LETTER FROM DEFENDANT VIOLATED THE PLAINTIFF'S RIGHTS UNDER
THE FDCPA .......................................................................................................... 10

    Defendant's Initial Demand Letter Fails to Comply with the Statute ..................... 10

    Defendant's Letter of June 24, 2013 violated the Plaintiff's FDCPA Rights by illegally
    threatening to place a lien On the Plaintiff's Home for defendant's charges. .......... 12

    Defendant's letter of July 19, 2013 illegally threatens to foreclose on a lien that had not even
    been filed yet. ..................................................................................................... 13

    Defendant's letters of August 2, 2013 and August 6, 2013 Each violate the Plaintiff's FDCPA
    Rights ................................................................................................................ 14

    Defendant's Lien Filed against Plaintiff's Property violates the Plaintiff's Rights under the
    FDCPA. .............................................................................................................. 15

    Defendant's letter of August 28, 2013 violates the Plaintiff's FDCPA RIGHTS AS it now
    demands $1,740 and if not paid in 10 days, $3,235 ............................................... 15

Defendant's letter of September 13, 2013 now demands $3,260 and if not paid in 10 days, demands $6,705! ........................................................................................................... 16

NONE OF THE DEFENDANT'S CHARGES IS REASONABLE ........................................... 17

CONCLUSION.................................................................................................................... 18

EXHIBIT LIST .................................................................................................................... 19

# QUESTIONS PRESENTED

Whether Defendant's attempts to collect charges from the Plaintiff that were never assessed or charged to Highlands Estates Condominium Association ("HECA") violated the Fair Debt Collection Practices Act ("FDCPA")?

Plaintiff answers: "Yes."

Defendant answer: "No."

Whether Defendant's communications to the Plaintiff in which it repeatedly misrepresented the balance due from her, and misrepresented that she owed the entire balance to HECA when most of these charges were unilaterally imposed by the Defendant, violated the FDCPA?

Plaintiff answers: "Yes."

Defendant answer: "No."

Whether the lien that Defendant filed on the Plaintiff's property purportedly under the guise of attempting to collect funds due to HECA violated the FDCPA?

Plaintiff answers: "Yes."

Defendant answer: "No."

Whether Defendant's initial letter to Plaintiff failed to comply with the mandate of the FDCPA that requires third party debt collectors to provide certain information to consumers.

Plaintiff answers: "Yes."

Defendant answer: "No."

# INDEX OF AUTHORITY

## Cases

*60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987 ........................................ 4

*Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999) .................................................................................................................... 4

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ... 3

*Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000) ...................................................................... 4

*Baker v. G. C. Services Corp.*, 677 F.2d 775, 778 (9th Cir. 1982) ................................................ 11

*Bentley v. Great Lakes Collection Bureau, Inc.*, 6 F.3d 60, 63 (2d Cir. 1993) ............................. 5

*Bultema v. United States*, 359 F.3d 379, 382 (6th Cir. 2004) ......................................................... 4

*Camacho v. Bridgeport Fin., Inc.*, 430 F.3d 1078, 1082 (9th Cir. Cal. 2005) ............................. 12

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ............. 3

*Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006) .............................................................. 4

*Clomon v. Jackson*, 988 F.2d at 1318 (1993). ................................................................................ 6

*Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. Conn. 2010) ................................. 5

*Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000) ............................................. 4

*Johnson v Riddle*, 305 F3d 1107 at 1118 (2002) ............................................................................ 5

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) ......................................................................................................... 3

*Midland Funding, LLC v Brent*, 644 F. Supp2nd 961 (2009) .......................................................... 3

*Newman v Boehm, Pearlstein and Bright*, 119 F.3d 477, 482 (1997) ............................................. 5

*Rosa v. Gaynor*, 784 F. Supp. 1, 3 (D.Conn. 1989. ........................................................................ 6

*Schweizer v Trans Union Corp*, 136 F.3d 233 (1998) ..................................................................... 6

*Stojanovski v. Strobl and Manoogian, P.C.*, 783 F. Supp. 319, 323 (E.D. Mich. 1992) ............... 5

*Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir.1994) .............................................................................. 4

*Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) .......................................... 4

## Statutes

15 U.S.C. § 1692e ............................................................................................................................. 6

15 U.S.C. § 1692g(a)(3) .................................................................................................................. 11

15 U.S.C. 1682a(5) ........................................................................................................................... 5

15 U.S.C. 1692 .................................................................................................................................. 4

15 U.S.C. 1692g(b) ......................................................................................................................... 12

15 USC 1681e(2) .............................................................................................................................. 8

15 USC 1681g(a)(5) ........................................................................................................................ 11

15 USC 1692d(4) ............................................................................................................................. 12

15 USC 1692d(5) ............................................................................................................................. 13

15 USC 1692e ........................................................................................................................... passim

15 USC 1692f ..................................................................................................................... vi, 8, 15, 17

15 USC 1692g ................................................................................................................................. 11

1692e ............................................................................................................................................... 10

## Rules

Fed.R.Civ.P. 56(c) ............................................................................................................................ 3

# BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FRCP 56A.

## FACTS

### *HIGHLANDS ESTATES HOMEOWNERS ASSOCIATION ("HECA") HIRES DEFENDANT EQUITY EXPERTS TO COLLECT DELINQUENT HOMEOWNERS ASSOCIATION DUES ON TERMS REQUIRING DEFENDANT TO SEEK ITS COSTS AND CHARGES FROM HOMEOWNERS ONLY.*

Plaintiff Daphne Jarrett owns a condominium unit in the Highlands Estates Condominium Association ("HECA").  HECA charges quarterly home owners association dues of $125.00.  According to Landarc, Inc., which is HECA's property management company, Ms. Jarrett owed an arrearage on her home owner's association dues of $350 including late charges as of April 12, 2013 (Ex 1).

HECA hired Defendant EquityExperts.org ("EE") to collect past due homeowners association dues (Ex 2 – pp 20).  Their arrangement is quite simple; perhaps it was a bit too simple.  Defendant agrees to charge its fees only to homeowners and never charge these fees to HECA.  (Ex 2 - pp 21 and Ex 3).  As discussed below, under HECA's By Laws, HECA can only collect from its co-owners those fees that it assesses or costs which it incurs in attempt to collect delinquent accounts.  In this case, none of the charges that Defendant attempted to collect from Ms. Jarrett were ever charged to HECA or assessed to her by HECA.  Hence, Defendant never had any legal basis for collecting anything other than homeowner's association dues and assessed late fees.  Conclusively, the Defendant's charges to Plaintiff never had basis in statute or contract nor did Plaintiff ever agree to pay these charges (Ex 2 – pp 46) and hence, violated the Plaintiff's rights at 15 USC 1692f, amongst other provisions of the FDCPA violated by the Defendant.

1

### DEFENDANT'S LETTERS TO PLAINTIFF

As of April 12, 2013, Landarc's records showed that Plaintiff was in arrears in the amount of $350 on her homeowners association dues (Ex 1).

On June 18, 2013, Defendant sent its first letter to Plaintiff demanding that she pay $670 on account of what she owes to HECA.  The letter contains no breakdown of why Ms. Jarrett owes $670 and certainly contains no reference to EE's own charges that it included in this balance.  EE also said that if she did not pay that balance, she would owe at least $1,065 (Ex 4).

On June 24, 2013, EE sent another demand letter to Ms. Jarrett stating that she owes HECA the sum of $670.00 (Ex 5).

On July 19, 2013, EE sent a letter to Ms. Jarrett threatening to *foreclose* on a lien that it had not yet even placed on her property "within 10 days" from the date of the letter, on her property for $1,215 (Ex 6).

On July 22, 2013, Plaintiff received a letter from Landarc showing that she only owed $425 to HECA and not $1,215 as alleged by Defendant.  (Ex 7).

On August 2, 2013, Defendant sent another letter to Ms. Jarrett demanding that she pay $1,965 on account of her balance due to HECA.  (Ex 8).  This letter, like all of the other letters she received from EE contained no breakdown of the balance claimed by EE and certainly contained no reference to EE's own charges that it included in this balance

On or about August 6, 2013, Defendant sent another letter to Ms. Jarrett misrepresenting to her that she owed HECA the sum of $1,965 (Ex 9).

On August 14, 2013, Defendant actually filed a lien on the Plaintiff's property for $1,215 (Ex 10).  The lien was signed by Defendant's operations manager and deposition witness, Jacqueline Galofaro.

2

On August 28, 2013, Defendant EE sent a letter to Ms. Jarrett stating that she now owes $1,740 and if she does not pay it within 10 days, that she will then owe "at least $3235" (Ex 11).

On September 13, 2013, Defendant EE sent the Plaintiff a letter accompanied by a document entitled Notice of Condominium Assessment Lien Foreclosure by Advertisement (Ex 12). In this document, Defendant attempted to collect $6,706 from the Plaintiff. Even though Defendant previously filed lien in the amount of $1,215 on Plaintiff's property, it appears that it is now refusing to remove that lien unless it's paid $6,705.00. Id.

## STANDARD FOR GRANTING PLAINTIFF'S MOTION PURSUANT TO FRCP 56A

The District Court in *Midland Funding, LLC v Brent*, 644 F. Supp2d 961 (2009) laid out an excellent discussion on the standard for granting a Motion for Summary Judgment. It held:

> Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court views the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. Id. at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). The party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; see also *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006); *Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a

party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir.1994) (quoting Anderson, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071; *Bultema v. United States*, 359 F.3d 379, 382 (6th Cir. 2004). The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc*., 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; see also *Atchley v. RK Co*., 224 F.3d 537, 539 (6th Cir. 2000).

In the case before this court, the material facts are not in dispute. Plaintiff is entitled to summary judgment as a matter of law if the court finds that the Defendant violated the FDCPA is any respect. The Defendant's violations of the law are all here in black and white and attached as exhibits to this motion.

## THE FAIR DEBT COLLECTION PRACTICES ACT – GENERALLY

The Fair Debt Collection Practices Act ("FDCPA") is promulgated at 15 U.S.C. 1692. In the FDCPA, Congress specifically made a finding that "There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. 1692(a).

The FDCPA is extraordinarily broad and is treated as a strict liability statute in which a single violation is sufficient to establish liability. *Stojanovski v. Strobl and Manoogian, P.C.*, 783 F. Supp. 319, 323 (E.D. Mich. 1992). In addition, as a remedial statute, the FDCPA is liberally

construed in favor of the consumer.   *Johnson v Riddle*, 305 F3d 1107 at 1118 (2002).  To recover damages under the FDCPA, a consumer does not need to show intentional conduct on the part of the debt collector. The Act "is a strict liability statute, and the degree of a defendant's culpability may only be considered in computing damages." *Bentley v. Great Lakes Collection Bureau, Inc*., 6 F.3d 60, 63 (2d Cir. 1993) *Ellis v. Solomon & Solomon, P.C*., 591 F.3d 130, 135 (2d Cir. Conn. 2010).

In the case before this court, Defendant Equity Experts is a debt collector.  It admitted as much in most, if not all of its communications with the Plaintiff (See Exhibits 4 -12 which all state "THIS OFFICE IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE."  (Ex 4,5,6,8,9,11 and 12).  Moreover, it has admitted this in its deposition as well.  (Ex 2 – pp 9, 18)

The debt at issue in this case is squarely within the precepts of the FDCPA which defines "debt" as any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes.  15 U.S.C. 1682a(5).  In this case, EE was attempting to collect homeowner's association dues.  Homeowners' dues are covered by the FDCPA.  *Newman v Boehm, Pearlstein and Bright*, 119 F.3d 477, 482 (1997).

## STANDARD OF CARE UNDER THE FDCPA.

Debt collectors are prohibited by the FDCPA from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.  In determining whether the FDCPA has been violated, courts look to the "*least sophisticated consumer*" standard.  *Schweizer v Trans Union Corp*, 136 F.3d 233 (1998).  In

5

Schweizer, the court held "The basic purpose of [this standard] is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Clomon v. Jackson*, 988 F.2d at 1318 (1993). "The FDCPA does not extend to every bizarre or idiosyncratic interpretation by a debtor of a creditor's notice. However, it does reach the reasonable interpretation of a notice by even the least sophisticated [debtor]." *Rosa v. Gaynor*, 784 F. Supp. 1, 3 (D.Conn. 1989.

## DEFENDANT IS ONLY LEGALLY ABLE TO COLLECT CHARGES FROM PLAINTIFF THAT HAVE BEEN ASSESSED TO HER OR INCURRED BY HER HOMEOWNERS ASSOCIATION

According to HECA's Master Deed "Condominium Documents" is defined as "the Master Deed and the Exhibits hereto and the Articles of Incorporation of the Association". (Ex 13 – section 3(f)). The By Laws (Ex 14) were attached to the Master Deed as Exhibit A. HECA's By Laws provide the following relevant provisions with respect to amounts that HECA may collect from its co-owners:

   a.  Sums *assessed* to a Co-owner by the Association that are unpaid, together with interest on such sums, collection and late charges, advances made by the Association for taxes or other liens to protect its lien, attorney fees, and fines in accordance with the Condominium Documents, constitute a lien upon the Unit or units in the Condominium Project owned by the Co-owner at the time of the assessment (Ex 14 - pg 3, section 5 – emphasis added)

   b.  Expenses of Collection. The expenses *incurred* in collecting unpaid assessments, including interest, costs, actual attorneys' fees (not limited to statutory fees) and advances for taxes or other liens paid by the Association to protect its lien, shall be chargeable to the co-owner in default and shall be secured by the lien on his Unit. (*Id*. at page 5, section 6e. - emphasis added).

The HECA By Laws make clear that the only charges that it may collect from a co-owner are those that are "assessed" or "incurred."  In this case, HECA assessed quarterly home owner's association dues to Ms. Jarrett in the amount of $125.  It's also clear that HECA's management company, Landarc, Inc. assessed late fees of $25 per month instead of $25 per installment as

required by the By Laws.[2]  Equally clear in this case, is that at no time did HECA assess any fees other than its association dues and late fees to Ms. Jarrett.  Indeed, as of April 12, 2013, HECA advised Ms. Jarrett that she owed $350.00 (Ex 1).  That balance was made up solely of assessments and late fees.  Indeed, Landarc's records of July 22, 2013, make clear that Plaintiff's account with HECA is only comprised of these same items; quarterly assessments and late fees (Ex 7).  Clearly, HECA had only assessed to Ms. Jarrett her quarterly assessments and late fees and no charges from Defendant EE.  Equally clear is the fact that HECA incurred no charges from EE or any other entity due to Ms. Jarrett's delinquent account.  The agreement between Defendant and HECA is such that Defendant agreed to only attempt to collect money its fees and costs from Ms. Jarrett (Ex 2 – pp 21).

According to HECA's By Laws, Ms. Jarrett was only liable to HECA for her association dues and late fees; nothing else.  Defendant EE had absolutely no basis for attempting to collect anything other than these two items from Ms. Jarrett.

## THE THREE COMMON FDCPA VIOLATIONS PRESENT IN MOST OF THE DEFENDANT'S LETTERS TO MS. JARRETT.

Defendant's letters in Exhibits 4,5,8,9 and 11 contain 3 common violations of the FDCPA.  The three common violations are (collectively "**Three Common FDCPA Violations**"):

---

[2] The HECA By Laws also provide "The payment of an assessment shall be in default if such assessment, or any part thereof, if not paid to the Association in full on or before the due date for such payment. A late fee of Twenty-Five ($25.00) Dollars shall be imposed on each **installment** which is in default for ten (10) or more days."  (Ex 14 – section 3). The By Laws allow installments of monthly, quarterly, semi-annual or annual payments.  Id at Section 3.

## FALSE AMOUNT DEMANDED

As noted above, Defendant never had any legal basis for demanding anything other than the arrearage on Ms. Jarrett's association dues and related late fees. HECA never assessed the additional charges sought by Defendant against Ms. Jarrett, to her account. Moreover, HECA never incurred any additional charges from Defendant as the agreement between HECA and Defendant was that Defendant would look solely to co-owners for payment of their fees.[3]

The False Amount Demanded by Defendant violates 15 USC 1692e of the FDCPA which prohibits debt collectors from making any false, deceptive or misleading representations in connection with the collection of a debt. Indeed 15 USC 1681e(2) specifically prohibits a debt collector from falsely representing the character, amount or legal status of any debt.

The False Amount Demanded also violates 15 USC 1692f(1) which prohibits a debt collector from collecting any amount (including interest, fee, charge or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. It's undisputed that Ms. Jarrett never agreed to the Defendant's charges (Ex 2 – pp 46). None of the charges that the Defendant attempted to collect were authorized by law nor by Ms. Jarrett.

Ms. Jarrett may have owed an arrearage on the association dues and late fees but she never owed any other fees that Defendant attempted to collect from her. These ridiculous fees include:

    a.  $95 "first letter fee" and a $175 "set up fee" (Ex 2 – pp 45),

---

[3] This arrangement might have been valid had HECA, in fact, assessed such charges to Ms. Jarrett or had incurred the costs of collection from Defendant. Although, even if HECA had taken either one of these courses of action, the Defendant would still not be entitled to the fees and charges it assessed. These charges, as discussed above and below, were grossly unreasonable. HECA's By Laws require that such additional charges must be reasonable. See Ex 14 – section 3 states "The Association may increase or assess such other reasonable automatic late charges or may, pursuant to Article XIX hereof, levy additional fines for late payment of assessments as the Association deems necessary from time to time." (Article XIX discusses violations of provisions in Condominium Documents and the fact that fines must be assessed.)

    b.  $395 for a "lien recording fee" (Id. at 46),

    c.  $750 for "constant contact" which is a series of 4 letters and telephone to a co-owner over a period of 4 weeks (Id. at 65-66, 68),

    d.  $395 fee to prepare and sign a lien form (Id. at 72),

    e.  $1,495 to send out a form entitled Notice of Intent to Foreclose (Id. at 83),

    f.  $2,995 for "completing the foreclosure through he sheriff's deed or the redemption certificate (Id. at 97).

These charges are absurd!  All of the balances demanded by Defendant from Ms. Jarrett contain one or more of the bogus charges.

## FALSE CREDITOR

All of the documents sent by the Defendant to Plaintiff, including its letters, allege that all such funds are due on account of Plaintiff's liability to HECA.  That is just patently false. Most of the charges that Defendant attempted to collect are fees that it was attempting to collect for itself; these charges were never due to HECA.  Each balance demanded by EE contained not only HECA association fees and late charges which were due to HECA, but large charges that Defendant was illegally attempting to collect for itself. Each time EE misrepresents the creditor for its own fees, it violates 15 USC 1681e by making false representations as to the true creditor of these charges.

## LETTERHEAD CONFUSION

Each of these letters contains two names and addresses at the top.  On the left side of the page is the name and address of Highlands Estates and on the right side of the top of each letter is the name and address of Equity Experts.   Each of these names and address is in a different font.  The least sophisticated consumer, which is the standard by which a court is to determine whether there is a violation of the FDCPA, would not know by looking at these letters, from whom they were sent.  Indeed, the body of each letter is generic enough in language to avoid

9

identifying the particular sender. Plaintiff's counsel only learned that these letters were sent by Defendant during the Defendant's deposition wherein Ms. Galofaro authenticated each of these exhibits (Ex 2).

15 USC 1692e prohibit a debt collector from making any false, deceptive or misleading representations in connection with the collection of a debt. In this case, the Defendant's Letterhead Confusion does not make clear that the letters were from Equity Experts. It equally appears that the letter was from Highlands Estates when in fact, it was not. Exhibits 4,5,8,9 and 11 all violate section 1692e by failing to clearly identify the sender of these letters.

By causing Letterhead Confusion, the Defendant further perpetuates the illusion that its HECA that is seeking these highly inflated balances including the illegal amounts charged by Defendant itself.

## EACH LETTER FROM DEFENDANT VIOLATED THE PLAINTIFF'S RIGHTS UNDER THE FDCPA

### DEFENDANT'S INITIAL DEMAND LETTER FAILS TO COMPLY WITH THE STATUTE

On June 18, 2013, Defendant sent its first letter to Plaintiff demanding that she pay $670 to it on account of what she owes to HECA. EE also stated that if she did not pay that balance, she would owe "at least $1,065" (Ex 4). Ms. Jacqueline Galafaro, EE's operations manager, gave a deposition in this case. She testified that this letter was the very first letter that Defendant sent to the Plaintiff (Ex 2 - pp 45). As discussed below, this demand letter completely fails to comply with the requirements of the FDCPA at 15 USC 1692g which provides:

> *Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following*

10

*information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—*

*(1) the amount of the debt;*

*(2) the name of the creditor to whom the debt is owed;*

*(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;*

*(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and*

*(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.*

Defendant's letter of June 18, 2013 states "You have thirty (30) days to dispute this debt."  This letter fails to state that Ms. Jarrett may dispute <u>any portion</u> of the debt as required at 15 USC 1681g(a)(5).   The clear language of the statute explicitly requires that a debtor shall be given notice that he may "dispute the validity of the debt, or any portion thereof…." 15 U.S.C. § 1692g(a)(3).  *Baker v. G. C. Services Corp*., 677 F.2d 775, 778 (9th Cir. 1982).  Exhibit 4 fails to give Ms. Jarrett notice that she may dispute any portion of the debt and thus violates the statute.

Moreover, the Defendant in Exhibit 4 requires Ms. Jarrett to posit any dispute to the debt in writing, within 30 days of the letter. The FDCPA contains no requirement that a consumer must posit a dispute in writing or within 30 days.  The plain language of subsection g(a)(3) indicates that disputes need not be made in writing, and the plain meaning is neither absurd in its results nor contrary to legislative intent. Thus, there is no writing requirement implicit in §1692g(a)(3).  *Camacho v. Bridgeport Fin., Inc.*, 430 F.3d 1078, 1082 (9th Cir. Cal. 2005).

Inasmuch as Exhibit 4 requires Ms. Jarrett to file her dispute in writing and within 30 days, each of these additional requirements violates the FDCPA.  The statute does not require Ms. Jarrett to posit a dispute to the debt within 30 days.  Rather, it requires a written dispute by a consumer within 30 days of receiving a demand letter if the consumer wants validation of the debt.  15 U.S.C. 1692g(b).  Barring such a demand by the consumer, she is free to dispute a debt at any time.

Exhibit 4 contains the Three FDCPA Violations.  This $670 balance demanded by the Defendant is comprised of $350 owed to HECA, plus the following charges added in by the Defendant; $175 for a setup fee and $95 for a first letter fee (Ex 2 – pp 45).  None of these charges were agreed to by Plaintiff or authorized by law.  Defendant's attempt to collect these items violates the FDCPA at 15 USC 1692e and f(1).

## DEFENDANT'S LETTER OF JUNE 24, 2013 VIOLATED THE PLAINTIFF'S FDCPA RIGHTS BY ILLEGALLY THREATENING TO PLACE A LIEN ON THE PLAINTIFF'S HOME FOR DEFENDANT'S CHARGES.

Defendant's demand letter of June 24, 2013 contains the Three Common FDCPA violations but also contains a threat to place a lien on Plaintiff's property for the $670 balance demanded (Ex 5).  This letter violates 15 USC 1692d(4) which prohibits a debt collector from making any representation that the nonpayment of any debt will result in the seizure of property unless such action is lawful.  Defendant never had any legal basis for demanding the payment of charges not assessed against her or incurred by HECA on her account.  Hence, Defendant's threat to place a lien on her property for these additional and illegal charges violates this section of the statute.

Defendant letter in Exhibit 5 also violates 15 USC 1692d(5) which prohibits a debt collector from taking any action that cannot legally be taken. In either case, the Defendant had no

12

right to threaten to place a lien on Ms. Jarrett's property for its bogus fees and costs.  In Exhibit 5, the $670 balance demanded by Defendant contained such bogus charges.

## DEFENDANT'S LETTER OF JULY 19, 2013 ILLEGALLY THREATENS TO FORECLOSE ON A LIEN THAT HAD NOT EVEN BEEN FILED YET.

Attached to Defendant's letter of July 19, 2013 is a proposed lien (Ex 6).  This letter presents several violations of Ms. Jarrett's rights under FDCPA.

First the letter states "…unless we receive full payment of all amounts due owed within ten (10) calendar days from the date of this letter, we will foreclose the lien by advertisement and Sheriff's Deed."  It was impossible for the Defendant to have foreclosed on a lien that had not been recorded yet.  The attached proposed lien was not recorded until August 14, 2013 (Ex 2 – pp 58, Ex 10).  Ten days after the date of the Defendant's letter in Exhibit 6 would have been July 29, 2013.  Since the Defendant threatened foreclosure of its lien by July 29, 2013 and the lien was not recorded until August 14, 2013, it had threatened to take action that it did not have the right to take. This threat violates Plaintiff's rights under 15 USC 1692e(5) which prohibits a debt collector from taking any action that cannot legally be taken or that is not intended to be taken.

Secondly, the letter contains the False Amount Demanded Violation.  This letter demands $1,215 from the Plaintiff.  According to the Defendant, this balance is comprised of the $425 due to HECA and  the remaining portion or $790 represents Defendant's charges (Ex 2 – pp 63). This violates Plaintiff's rights at 15 USC 1692e

Thirdly, the Defendant misstated what HECA records reflects with respect to this account.  Indeed, Defendant states in this letter "According to the association's records, (sic) as of July 19, 2013, you owed the association the sum of $1,215 for assessments and collection

13

activities.  (Ex 6).  This is patently untrue.  Landarc's records never reflected a dime of the Defendant's bogus charges.  Indeed as of July 22, 2013, Landarc's records showed that Ms. Jarret owed $425.00 (Ex 7).  This false assertion violates 15 USC 1692e. None of the Defendant's bogus charges were ever assessed to her by HECA or incurred by HECA due to Plaintiff's delinquent account.

Fourthly, the purported lien attached to Exhibit 6 falsely states "The amount due the association of co-owners at the date of the notice is $1,215, exclusive of interest, cost, attorney fees and future assessments…."  Defendant conveniently ignored the fact that it bogus charges comprise the vast majority of this incorrect balance.  Again, this false assertion violates 15 USC 1692e as this statement was patently false.

## DEFENDANT'S LETTERS OF AUGUST 2, 2013 AND AUGUST 6, 2013 EACH VIOLATE THE PLAINTIFF'S FDCPA RIGHTS

Exhibits 8 and 9 are each Defendant's letters of August 2, 2013 and August 6, 2013, respectively, to the Plaintiff.  Each letter contains the Three Common FDCPA Violations.

Exhibit 9, however contains an offer for a payment plan for the new balance demanded of $1,965.  In this proposed payment plan, Defendant offers to take 3 monthly payments of $763.34 beginning August 20, 2013.  The problem with this payment plan is that 3 x 763.34 = $2,290.02 which is $325.02 more than the $1,965 requested in the letter.  Is the Defendant now seeking additional costs or interest?  There is no way to know what the basis for Defendant's request for additional monies are for.  What is clear, is that the Defendant is not entitled to any of these additional charge.

**DEFENDANT'S LIEN FILED AGAINST PLAINTIFF'S PROPERTY VIOLATES THE PLAINTIFF'S RIGHTS UNDER THE FDCPA.**

Defendant's proposed lien as originally presented to the Plaintiff on July 19, 2013 (Ex 6) was recorded on August 14, 2013 (Ex 10).  The lien is for a balance of $1,215.  As noted earlier, the purported lien falsely states "The amount due the association of co-owners at the date of the notice is $1,215, exclusive of interest, costs, attorney fees and future assessments…."  Inasmuch as this balance contains Defendant's bogus charges, this false assertion violates 15 USC 1692e.

Secondly, the lien also violates 15 USC 1692f as it's a patently unfair practice for the Defendant to attempt to collect a debt from the Plaintiff for its own baseless and bogus charges via a lien on Plaintiff's home.  Defendant had no right to file a lien on the Plaintiff's property for its charges for which there was no legal basis.

**DEFENDANT'S LETTER OF AUGUST 28, 2013 VIOLATES THE PLAINTIFF'S FDCPA RIGHTS AS IT NOW DEMANDS $1,740 AND IF NOT PAID IN 10 DAYS, $3,235.**

Defendant's letter of August 28, 2013 would be comical if not for the lien that Defendant had placed on Ms. Jarrett's property (Ex 11).  This letter contains the Three Common FDCPA Violations.  Moreover, it contains a new demand of $1,740 up from the previous $1,215 demanded two months earlier by the Defendant (Ex 6) and up from the $1,965 demanded by the Defendant just 3 weeks earlier (Ex 8 and 9).  This increase is due to the addition of Defendant's "Constant Contact Package" for which it charges $750.00 (Ex 2 – pp 65-66).

According to Ms. Galofaro, the balance due from Jarrett would go up to $3,235 as this would then include a charge of $1,495 for an "Intent to Foreclose package."  This service is comprised of reviewing the title to the consumer's property and then sending the homeowner a

15

letter by first class mail and certified mail. (Ex 2 – pp 83-84). Inasmuch as this balance contains Defendant's bogus charges, this false assertion violates 15 USC 1692e and f

Secondly, this letter is dated August 28, 2013 and begins with the sentence "This is the last letter we will send you regarding the outstanding debt due to Highlands Estates, (sic) for past association dues. Yet, as noted below, Defendant sent a subsequent letter a mere two weeks later, demanding payment on these things (Ex 12). Hence, Defendant again misled the Plaintiff and made a false statement to her in connection with the collection off a debt and in doing so, violated 15 USC 1692e.

## DEFENDANT'S LETTER OF SEPTEMBER 13, 2013 NOW DEMANDS $3,260 AND IF NOT PAID IN 10 DAYS, DEMANDS $6,705!

On September 13, 2013, the Defendant sent Ms. Jarrett a letter demanding a balance of $3,260 (Ex 12). EE also threatened to increase her balance to $6,705 if she did not pay the $3,260 within 10 days. *Id*. This is an increase of $3,445.00. According to Ms. Galofaro, the increase is due to Defendant's charges of $2,995 "to complete the foreclosure" (Ex 2 – pp 97) plus $400 in costs to advertise the foreclosure. *Id*.

In October of 2013, the Defendant attempted to foreclose on its improperly filed lien. Ms. Jarrett, through counsel, filed a lawsuit in Wayne County Circuit Court to stop the foreclosure by advertisement (Ex 15). On November 22, 2013, Ms. Jarrett secured a preliminary injunction from the state court enjoining the foreclosure (Ex 16). Neither Defendant nor HECA ever foreclosed on her property. Yet this did not stop Defendant from threatening the Plaintiff with a new document of an unknown nature entitled "Notice of Condominium Lien Foreclosure By Advertisement" in which Defendant attempted to collect $6,705 from Ms. Jarrett. Never

mind that Defendant filed a bogus lien for $1,215, it would now only remove its lien if Ms. Jarrett pays $6,705 for which HECA was only owed $450!

This questionable document along with Defendant's letter of September 13, 2013 violate 15 USC 1692e as these documents falsely represent what the Plaintiff owes, even under the Defendant's own nefarious standards.  Again, Defendant never foreclosed on the Plaintiff's home and hence, under no circumstance was Ms. Jarrett ever going to be liable for $2,995 charge to complete any foreclosure.

These documents of September 13, 2013 also violate 15 USC 1692f as these documents attempt to collect a charge to which the Plaintiff is not nor has she ever been liable.


## NONE OF THE DEFENDANT'S CHARGES IS REASONABLE

Ms. Galofaro, the Defendant's operations manager and a licensed attorney in Michigan, was unable to answer questions about the reasonableness of Defendant's purported charges to the Plaintiff.  Indeed, when quizzed about Defendant's charges, Ms. Galofaro was quite evasive. She testified that she has no idea how long it takes her people to perform tasks because she never timed it (Ex 2- pp 76).  When asked if she would be surprised if it took her people an hour to set up a file, she testified that she would not be surprised.  (Ex 2 – pp 76-77).

Defendant's "Constant Contact" package for which it charges a homeowner $750 includes 4 letters to the homeowner and telephone calls over 4 weeks.  (Ex 2 – pp 67).  That breaks down to an astounding $187.50 for each letter sent by the Defendant.

For $395, the Defendant filled in a lien form and signed it (Ex 2 – pp 72).  Even though Ms. Galofaro would not comment on how much time it took Defendant to fill in and sign such a form, it's clear that it would not take a reasonable person more than fifteen minutes to obtain the necessary information and fill it in.  That works out to $1,580 per hour for that work!

17

Defendant attempted to collect a $95 charge from Ms. Jarrett for a one page demand letter (Ex 2 – pp 74).  This is in addition to the "set up charge" of $175 that Defendant attempted to collect from her to set up her file (Ex 2 – pp 45).  Hence if all of the Plaintiff's data were input into the Defendant's computer system and it generates and mails out a form letter in 15 minutes, this works out to a stunning $380 per hour service that Defendant is attempting to collect from Ms. Jarrett.

These fees are ridiculously high and laughable, especially in light of the fact that the Defendant is doing work that requires no higher education.

## CONCLUSION

This case exemplifies a debt collector who either flouts the FDCPA or ignores it.  All of Equity Expert's correspondence materially violate the Plaintiff's rights.  There are no genuine issues of any material fact in this case.  The letters are all attached as exhibits and all glaringly violate the FDCPA.  None of the facts is in dispute.

Defendant has repeatedly attempted to collect charges that were due to no one.  These charges which Defendant added to Plaintiff's account had no basis in law or in contract. Defendant was hired to collect a debt from the Plaintiff for past due association dues.  However, the Defendant heaped on piles of charges that Plaintiff never agreed to nor for which there was ever any basis in law.

Plaintiff is entitled to summary judgment pursuant to FRCP 56a and moves this court for a judgment as to liability, reserving damages for a later hearing.

Respectfully submitted.


February 21, 2014          /s/ Gary Nitzkin
                          GARY D. NITZKIN (P 41155)
                          NITZKIN & ASSOCIATES
                          Attorneys for Plaintiff
                          22142 West Nine Mile Road
                          Southfield, MI 48033
                          (248) 353-2882
                          Fax (248) 353-4840
                          Email - gnitzkin@creditor-law.com




## **PROOF OF SERVICE**

    I, Gary D. Nitzkin hereby state that on February 21, 2014, I served a copy of the within
pleading upon all counsel of record via the ECF System.

                          /s/ Gary D. Nitzkin
                          Gary D. Nitzkin

# EXHIBIT LIST

1. April 12, 2013 letter from Landarc that P owes $350
2. Galofaro deposition 9-10, 20,21, 45, 46
3. Defendant's Website
4. June 18, 2013 letter that she owes $670
5. June 24, 2013 letter that she owes $670
6. July 19, 2013 lien letter for $1215.
7. July 22, 2013 letter from Landarc stating that she only owes $425
8. August 2, 2013 letter demanding 1965
9. August 6, 2013 letter offering to take payments over 3 months
10. August 14, 2013 RECORDED - lien
11. August 28, 2013 letter $1740/$3235
12. September 13, 2013 lien letter for $1215 but demanding $3260 or $6705
13. Master Deed
14. By Laws
15. State Court Complaint to Enjoin Foreclosure
16. Preliminary Injunction Enjoining Foreclosure